NOT FOR PUBLICATION                                                                 (Doc. No. 11)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GLOBAL MAINTENANCE, INC. d/b/a Cenova, Inc., <br><br> Plaintiff, <br><br> v. <br><br> TD BANK, N.A., and JOHNSON CONTROLS, INC., <br><br> Defendants. | Civil No. 11-5409 (RBK/KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This breach of contract action comes before the Court on the motion of Defendant TD Bank, N.A. ("TD" or "Defendant TD") to dismiss the claims asserted by Global Maintenance, Inc. ("Plaintiff" or "Cenova") for prospective lost profits under Counts I and XIII of the Complaint. For the reasons expressed below, Defendant TD's motion is granted in part and denied in part.

**I.     BACKGROUND**

Defendants TD Bank and Johnson Controls formed two separate contracts with Plaintiff Cenova, for snow-removal services ("Snow Agreement") and landscaping services ("Landscaping Agreement"). Compl,. Exs. 1 and 8. Each contract specified a three-year term. Snow Agreement, ¶ 3, and Landscaping Agreement, ¶ 3. The Snow Agreement took effect on November 1, 2009, and the Landscaping Agreement took effect on April 1, 2010. Id. The terms of the Snow and Landscaping Agreements appear to be identical, except that they refer to

different "Schedules" that outline the specific services to be provided to various premises owned by Defendant TD (also designated by each Agreement in a corresponding "Schedule").  <u>Compare</u> Snow Agreement <u>with</u> Landscaping Agreement.  Both contracts provided that, if Plaintiff breached the Agreement or if TD was dissatisfied with TD's performance, Defendant TD could give Plaintiff five days to cure the breach or to improve performance.  Snow Agreement and Landscaping Agreement, ¶ 10(a).  If the breach was not cured, or if performance not improved, within five days, TD could immediately terminate the contract.  <u>Id.</u>  Moreover, the contracts afforded TD the right to terminate the Agreement without any cause on thirty days' notice.  <u>Id.</u> at ¶ 10(b).

In this action, initially brought in the Superior Court of New Jersey, Camden County, Law Division, and removed to federal court by Defendant TD, Plaintiff alleges that, beginning around January 2010, TD breached the Snow Agreement by "failing to make payment on timely and properly submitted invoices within 30 days of the date of invoicing."  Compl., ¶ 23.  Plaintiff further alleges that it "repeatedly notified TD Bank and JCI of this breach of contract" orally and in writing, <u>Id.</u> at ¶ 24, and that, on October 19, 2010, Plaintiff informed TD that "as we have discussed . . . on many, many occasions, you are in Default of this Contractual payment requirement and, therefore, in breach of the Contract, where you have failed to pay for snow removal Invoices from the winter of 2009-2010, in the amount of $8,319.25. . . . These Invoices are now more than 140 days overdue."  Letter from Harry Scott, President of Cenova, to TD Bank/JCI Management, Oct. 19, 2010, Compl., Ex. 3.  On January 13, 2011, Plaintiff wrote to Defendant TD again, advising that TD's past due balance now exceeded $225,000.00.  Letter from Harry Scott, President of Cenova, to TD Bank/JCI Management, Jan. 13, 2011, Compl, Ex. 4.

Several days later, Defendant TD responded by letter informing Plaintiff "that TD Bank is very dissatisfied with the quality of your snow-removal services under the Agreement. Accordingly, TD Bank requires that you correct all deficiencies in your services to TD Bank's satisfaction by January 24, 2011 and TD is providing its 30 day notice of termination of the Agreement for convenience."  Letter from Jennifer Starbuck, JCI, to Harry Scott, Jan. 17, 2011, Compl., Ex. 5.  Thus Defendant TD terminated the Snow Agreement for the remainder of the 2010-11 season and all of the 2011-12 season, and Plaintiff alleges that "[a]t no time has TD Bank paid Cenova the amounts then and subsequently due and owing under the Snow Contract." Compl., ¶ 28.

Plaintiff's October 19, 2010 letter indicated that, "[i]n addition, you are in Default for a number of landscaping Invoices."  Scott Letter, Oct. 19, 2011, Compl. Ex.3.  Plaintiff's January 13, 2011 letter also indicated that Defendant TD's failure to pay included not only snow-removal invoices, but landscaping invoices as well.  Scott Letter, Jan. 13, 2011, Compl., Ex. 4.  However, this letter, like the October 19, 2011 Letter, makes direct reference only to the Snow Agreement ("Reoccurring Snow Removal Service Contract").  It is unclear whether Plaintiff ever definitively informed Defendant that it had breached the Landscaping Agreement.  It is also unclear precisely when or how Defendant TD terminated the Landscaping Agreement, but both parties agree that it did.  See Def.'s Br., 5 ("TD Bank subsequently terminated . . . the Maintenance Service Contract [i.e., Landscaping Agrement] for the 2011 and 2012 seasons."); Pl.'s Br. Opp., 5 ("TD Bank and JCI, moreover, subsequently purported to terminate the Landscape Contract for the 2011 and 2012 seasons, and did so only after Cenova took legal action against them relating to the Snow Contract and after TD Bank and JCI assured Cenova that they would not terminate the Landscape Contract.").

3

Accordingly, among other claims,[1] Plaintiff alleges in Count I of the Complaint that TD breached the Snow Agreement for recurring services, and alleges in Count XIII of the Complaint that TD breached the Landscaping Agreement.  Compl., Counts I, XIII.  Plaintiff claims over one million dollars in damages flowing from the conduct alleged in Count I, Compl. at ¶ 62, and "damages in an amount to be proven at trial" from the alleged breach of the Landscaping Agreement.  Id. at ¶ 141.  Plaintiff alleges that it "has been damaged by TD and JCI's breaches and is entitled to be paid for the remainder of the 2010-2011 snow removal season and for the 2011-2012 season in accordance with the Snow Contract." Id. at ¶ 33.  Plaintiff further alleges that it is entitled to "the balance due for the 2010 landscape season and for the 2011 and 2012 seasons," as agreed-upon in the Landscaping Agreement.  Id. at ¶ 56.  Defendant's sole contention in the instant motion is that Plaintiff has not stated a claim for which relief can be granted as to prospective lost profits under the Snow or Landscaping Agreements, and that any claim for prospective lost profit under Counts I or XIII should be dismissed.

## II.     STANDARD

### A. Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law.  Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").  Here, the Snow and Landscaping Agreements both provided that "the laws of the state in which this

---

[1] Plaintiff also alleges that Defendant TD breached a mutual nondisclosure agreement by providing confidential and proprietary information—specifically, the names, addresses, and contact information of Plaintiff's subcontractors—to Plaintiff's competitors.  ¶¶35-49.  As Defendant explains, "the claims related to [the nondisclosure agreement] are not included in [its] Motion to Dismiss." Def.'s Br., 5.  Plaintiff also alleges claims under the New Jersey Prompt Payment Act, breach of the duty of good faith and fair dealing, damages for promissory estoppel, unjust enrichment, and quantum meruit, violation of the Pennsylvania Uniform Trade Secrets Act, and violation of the Pennsylvania Contractor and Subcontractor Payment Act.  Defendant TD does not move to dismiss any of these causes of action in the instant motion.

4

contract was signed and agreed" would apply "without regard to [that state's] principles regarding conflict of laws." Snow Agreement and Landscaping Agreement, Compl., Exs. 1 and 8, ¶ 27(c).  Defendant TD argues that the contracts were signed and agreed upon in Pennsylvania, and Plaintiff not only does not dispute this, but also agrees with TD that Pennsylvania law governs the agreements.  See TD Br. in Support of Motion to Dismiss, 9 n.4; see also Pl.'s Br. in Opposition to Motion to Dismiss, 7 n.1.  Accordingly, the Court applies the substantive law of Pennsylvania.

**B. Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a three-part analysis is needed.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 129 S. Ct. at 1947).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 129 S. Ct. at 1950). This

plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III. DISCUSSION

Analysis of the instant motion must focus on when the Agreements in question ceased to bind the parties. Defendant TD argues that, because it terminated the Snow Agreement with Cenova either five days or thirty days after its January 17, 2011 letter informed Plaintiff of its dissatisfaction with Plaintiff's services, Plaintiff may only recover any damages incurred up to termination. Moreover, although it is unclear from Plaintiff's Complaint and Defendant's moving papers exactly when Defendant TD acted to terminate the Landscaping Agreement, TD's argument that Plaintiff may not recover for damages allegedly resulting from breach of that Agreement after the date of termination is nevertheless identical. TD bases this argument on Paragraph 10(d) of the Snow and Landscaping Agreements, which provides as follows:

> Upon termination, TD Bank shall pay the Contractor the compensation to which the Contractor is entitled for Services earned and unpaid to the date of termination (subject to any deductions pursuant to this Agreement) and shall have no further financial or legal obligations to the Contractor. Termination of this Agreement by TD Bank, as provided herein, shall be without prejudice to TD Bank's right to recover damages from the Contractor, or any other rights and remedies of TD Bank under this Agreement or available at law or equity.

Compl., Exs. 1 and 8, ¶ 10(d).

However, Defendant's argument ignores the fact that, according to the facts alleged in the Complaint, Defendant TD had breached the Snow and Landscaping Agreements by failing to remit the required payment for Plaintiff's services. Moreover, Plaintiff informed Defendant in pellucid language at least as early as October 19, 2010 that it was in breach of the Snow

Agreement.[2]  See Oct. 19, 2010 Scott Letter, Compl., Ex. 4.  Accordingly, the question before the Court is whether Defendant TD was able to exercise its termination rights under ¶ 10 of the Snow Agreement, after TD breached that Agreement.

The Pennsylvania Superior Court has underscored the classic contract principle that, "'[w]hen one party commits a material breach of contract, the other party has a choice between two inconsistent rights—he or she can either elect to allege a total breach, terminate the contract and bring an action, or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach . . . .'"  Gillard v. Martin, 13 A.3d 482, 487 (Pa. Super. Ct. 2010) (quoting 13 R. Lord, Williston on Contracts (4th Ed. 1990), § 39:32, p.645).  In this case, Mr. Scott's letters clearly informed Defendant that Plaintiff believed TD had breached the Snow Agreement, putting Plaintiff in precisely the situation described above, wherein Cenova had "a choice between two inconsistent rights."  Cenova alleges that "[n]otwithstanding TD Bank's breach, Cenova continued to perform . . . [s]ervices during the 2010-2011 snow season, but TD Bank continued to fail and refuse to pay . . . ."  Compl., ¶ 27.  Accordingly, Plaintiff chose the latter option outlined above—that is, "keep[ing] the contract in force, [and] declar[ing] the fault only a partial breach . . . ."  By continuing to perform its contractual obligations after declaring the Snow Agreement breached, Plaintiff kept the contract active, and limited its potential recovery only to those damages caused by the partial breach.  The Third Circuit has characterized such a choice as falling under the doctrine of election.[3]  See Evcco Leasing Corp. v. Ace Trucking Co., 828 F.2d 188, 195 (3d Cir. 1987)

---

[2] The allegations concerning the Landscaping Agreement are less clear, and will be addressed separately below.
[3] The Third Circuit has distinguished between the concepts of "election" and "waiver."  See Evvco Leasing Corp. v. Ace Trucking Co., 828 F.2d 188, 195 (3d Cir. 1987) (pointing out that a plaintiff's attempt to "answer an assertion of waiver with an election argument" failed because "[t]he two are not identical").  Accordingly, although the Snow and Landscaping Agreements provide that "waiver of any default, breach, or non-compliance under this Agreement is not effective unless in writing and signed by the party to be bound by the waiver," see Agreements, ¶ 27(g), the waiver provision is inapplicable to the instant question.  Moreover, Plaintiff has not raised it.

(finding that election is "a choice between two alternative and inconsistent rights."); see also William W. Bierce, Ltd. v. Hutchins, 205 U.S. 340, 346 (1907) ("Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone."). In this case, Plaintiff elected to continue performance of the contract, rather than consider Defendant's alleged conduct a total breach and terminating the Agreement.

Having made such an election, Plaintiff cannot now claim that Defendant lost its right to exercise the Snow Agreement's termination clause when Defendant breached the contract. Plaintiff argues that, because "Cenova objected to TD Bank's breach," Cenova "thereby reserved its rights arising from that breach." Pl.'s Br. Opp., 8. However, as explained above, a party does not preserve the entirety of its contract rights merely by voicing objection to breach. Rather, if it elects to continue its performance, a nonbreaching party turns a material breach into a partial breach, and the contract remains active. Accepting the facts in favor of the Plaintiff, it is clear that, although Plaintiff recognized that TD was breaching the Snow Agreement, nevertheless Plaintiff elected to provide Defendant TD with an opportunity to cure. See, e.g., Pl.'s Br., 4 ; see also Jan. 13, 2011 Scott Letter. The January 13, 2011 letter "demand[ed] that [TD] come into compliance and pay all invoices which have been outstanding for more than 30 days . . . ." Jan. 13, 2011 Scott Letter. Meanwhile, Plaintiff alleges that it continued to perform its obligations under the Agreement. Compl., ¶ 27.

Accordingly, Defendant TD retained the right to exercise the Snow Agreement's termination clause, which it did in its January 17, 2011 letter to Cenova. To hold otherwise would be to permit Plaintiff to lock TD into the Agreement with no way out, with Plaintiff all the while piling up damages through continued performance of the Snow Agreement. Contract law

does not allow such a result; in fact, the doctrine of efficient breach militates forcefully against it. See, e.g. Windsor Secur., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 664 (3d Cir. 1993) (quoting 3 E. Allan Farnsworth, Contracts §12.8, at 194-94 (2d ed. 1990) ("'Most courts have not infringed on the freedom to keep or to break a contract traditionally afforded a party by the common law and endorsed by the notion of efficient breach.'")). Therefore, Plaintiff is unable to claim damages due to prospective lost profits under Count I of the Complaint (breach of the Snow Agreement).

As to Count XIII, although the fact pattern surrounding the alleged breach of the Landscaping Agreement is similar to the facts concerning breach of the Snow Agreement, the specifics of the former are less clear. Plaintiff does not allege that it informed Defendant of its breach, nor does the Complaint allege when Defendant attempted to terminate the Agreement. Moreover, and most importantly, the Complaint does not allege that Plaintiff continued performance of the Landscaping Agreement after it believed that Defendant TD had materially breached it. Construing the Complaint in the light most favorable to Plaintiff, as we must at the motion to dismiss stage, we conclude that Plaintiff elected to treat Defendant's breach of the Landscaping Agreement as a total breach, did not continue its performance, and effectively terminated the Agreement before Defendant attempted to exercise the termination clause. Accordingly, in contrast to the situation with the Snow Agreement, Defendant TD could not exercise the termination provision of the Landscaping Agreement because Plaintiff had already made the election to terminate it.

Therefore, under the facts alleged, Plaintiff is entitled to claim damages in the amount of the total value of the contract at the time of the breach. See Mass. Bonding & Ins. Co. v. Johnston & Harder, Inc., 348 Pa. 512, 518-19 (1943) ("It is well settled that the measure of

damages for breach of contract is the value of the contract at the date of cancellation . . . ."). Contract law requires that these damages compensate Plaintiff based on Plaintiff's expected gain from the contract; that is, "[t]he preferred basis of contract damages seeks to protect an injured party's 'expectation interest' . . . ." Atacs Corp. v. Trans World Communs., 155 F.3d 659, 669 (3d Cir. 1998) (citing Trosky v. Civil Serv. Comm'n, 652 A.2d 813, 817 (Pa. 1995)). Expectation damages are measured by "the losses caused and gains prevented by defendant's breach, to the extent that [they] are in excess of any savings made possible by nonperformance." Atacs Corp., 155 F.3d at 669 (internal quotations omitted). Accordingly, Plaintiff's claim for damages for prospective profits lost as a result of Defendant's alleged breach of the Landscaping Agreement withstands Defendant's motion to dismiss.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant TD's motion to dismiss Plaintiff's claim for prospective lost profits alleged in Count I is **GRANTED**, and Defendant's motion to dismiss Plaintiff's claim for prospective lost profits under Count XIII of the Complaint is **DENIED**. An accompanying Order shall issue today.


Date: 5/7/2012                                                                 /s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge